In the Matter of Kevin A. HOLLOWAY.

No. 1185 S 472.

Supreme Court of Indiana.

Nov. 5, 1987.

Michael J. Siegel, Coffey & Maley, Indianapolis, for respondent.

Gregory M. Fudge, Staff Atty., Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

PER CURIAM

This cause was initiated pursuant to Admission and Discipline Rule 23, Section 12, by the filing of a three count Verified Complaint for Disciplinary Action. A Hearing Officer was appointed and now has tendered his findings of fact and conclusions of law. Neither the Disciplinary Commission of this Court, who brought this action, nor the Respondent, Kevin A. Holloway, who was represented by counsel during the hearing stages, has petitioned for review.

There being no objection to the tendered report of the appointed Hearing Officer, this Court now adopts and accepts as its own the recommended findings of fact. Accordingly, we find that the Respondent was duly admitted to the practice of law in the State of Indiana on October 12, 1978, and, therefore, is subject to the professional discipline of this Court.

Under Count I of the Verified Complaint, Respondent is charged with violating Disciplinary Rules 1–102(A)(4) and (6) of the *Code of Professional Responsibility for Attorneys at Law.* Pursuant to the Hearing Officer's report, we find that in January of 1983, the Respondent requested from Dr. Reeck, d/b/a Naab Road Orthopedics, Inc., a medical report on a client, Lisa Koehring. The report was prepared on February 16, 1983, and the Respondent was notified that the fee would be $100. On June 12, 1983, he requested that the report be forwarded to him and enclosed a check for $100. The report was forwarded as

requested, but Respondent's check was returned marked "non-sufficient funds". The Respondent was notified on two occasions, by telephone and by letter, that the check had been returned for non-sufficient funds and that the amount remained due and owing. The Respondent did not respond and did not satisfy the amount owed until April, 1986, approximately two years later. By tendering a check for a medical report which the Respondent had requested on behalf of his client, and after being notified that this check had been returned due to non-sufficient funds, failing to pay the amount owed for approximately 21 months, the Respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation and conduct which adversely reflects on his fitness to practice law, in violation of Disciplinary Rules 1–102(A)(4) and (6) as charged in the complaint.

Under Count II, the Respondent is charged with handling a legal matter without preparation adequate in the circumstances, in violation of Disciplinary Rule 6–101(A)(2); failing to properly deposit funds belonging to a client, in violation of Disciplinary Rule 9–102(A); and engaging in conduct which adversely reflects on his fitness to practice law, in violation of Disciplinary Rule 1–102(A)(6). Employing the Hearing Officer's findings of fact, we find that on February 24, 1983, the Respondent was retained by Lisa Duewson to pursue a personal injury claim arising out of an automobile accident because of which Duewson sustained injuries and incurred hospital and medical expenses. The case was eventually settled for $2,500. By a letter of July 5, 1983, the Respondent notified Duewson of the settlement and advised her that the $2,500, less his fee of $833, would result in a balance of $1,677, which would be used to satisfy the medical expenses. On June 6, 1983, the Respondent deposited the aforesaid amount in his trust account. Duewson's medical bills were not paid as promised and the hospital brought suit. The Respondent did not in fact satisfy the hospital bill of $308 until March 20, 1985. On April 3, 1986, approximately 3 years after promising to pay said

bills, the Respondent sent Duewson $653 in order that she might satisfy a doctor's bill which the Respondent had failed to satisfy but which bill he had negotiated down from $756 to $436.

Based on these findings, the Hearing Officer concluded that there was no misconduct under Count II. It was the Hearing Officer's assessment that the client was not harmed monetarily and, accordingly, the apparent lack of due diligence did not rise to the level of professional misconduct. This Court, although we have adopted the recommended findings of fact, need not accept the recommended conclusions of law. See, *In re Welke* (1984), Ind., 459 N.E.2d 725.

Professional conduct is not measured by the financial end-product of the relationship between attorney and client. Professionalism involves the performance of duties at acceptable levels. In the present case, the Respondent, in addition to other obligations, had a duty to safeguard the client's property, a duty to make an appropriate settlement on behalf of the client, and the duty to perform the required tasks within a reasonable period of time. After receiving his client's funds in the amount of $1,667, it took the Respondent three years to make the settlement. In the meantime, his client was sued over the obligation. These circumstances seriously call to question the Respondent's professionalism. Accordingly, we now find that the Respondent engaged in conduct which adversely reflects on his fitness to practice law in violation of Disciplinary Rule 1–102(A)(6).

Under Count III, the Respondent is charged with engaging in conduct involving dishonesty, fraud, deceit or misrepresentation and conduct that adversely reflects on his fitness to practice law in violation of Disciplinary Rule 1–102(A)(4) and (6). Again, adopting the Hearing Officer's findings, we find that the Respondent was appointed co-executor with Frederick H. Johnson, the sole heir of the estate of Johnson's mother, Helen Cohn. On June 20, 1979, the Respondent filed a final accounting and

closed the estate. The total distribution was approximately $46,000.

Shortly after the distribution was made to Frederick Johnson, the Respondent borrowed $5,000 from him. Frederick Johnson died on August 3, 1984. Prior to Johnson's death, the Respondent had made only one payment toward the satisfaction of the debt, but the check with which the payment was made was returned due to non-sufficient funds. The personal representatives made no attempt to have the Respondent satisfy his obligation to the Johnson estate. However, Johnson's widow, Chestora L. Johnson, requested that the Respondent repay the loan, and, on October 26, 1984, he executed a promissory note. Therein, the Respondent agreed to pay to Chestora Johnson $5,000 at 0% interest at the rate of $500 per month until paid, payable on the 15th day of each month, commencing on November 15, 1985. At the time of the hearing, the Respondent had paid back a total of $750 with $4,250 still remaining due.

The Hearing Officer concluded that under the circumstances of this case, there was no misconduct. This Court does not accept such conclusion. The mere financial inability to repay a debt would not normally subject an attorney to a disciplinary sanction. In this instance, however, Respondent's failure to repay the loan is accompanied by deceitful and misleading actions. The Respondent obtained his knowledge of the estate distribution to Johnson by virtue of a fiduciary relationship; there is no indication that he executed any written instrument to evidence the initial loan; he tendered partial payment with a bad check; and, after specifically reaffirming his promise to repay, again simply failed to do so without any indication as to why. We conclude that these findings sufficiently prove that the Respondent engaged in the charged misconduct and thereby violated Disciplinary Rules 1–102(A)(4) and (6) of the *Code of Professional Responsibility for Attorneys at Law.*

Upon finding that the Respondent engaged in misconduct, we must next assess an appropriate sanction. Having considered the nature of the violations and the specific acts of the Respondent, we find that the misconduct exhibited under all three counts involves acts which clearly call to question the Respondent's fitness to continue in the profession. Although this conduct does not raise to the more critical level of misusing clients' funds, the reoccurring dishonesty in matters involving the handling of money raises serious questions as to Respondent's professional and personal integrity. It would be very difficult for any member of the profession or the public to have confidence in Respondent's performance.

In light of the foregoing considerations and being mindful of this Court's responsibility to preserve the integrity of the Bar, and to protect the public, we find that a period of suspension is appropriate under the circumstances of this case. It is, therefore, ordered that the Respondent, Kevin A. Holloway, be and he hereby is suspended from the practice of law for a period of one year beginning December 3, 1987.

Costs of this proceeding are assessed against the Respondent.

DeBRULER, J., dissents as to the sanction imposed and would approve a private reprimand.